

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806   www.pryorcashman.com

New York | Los Angeles

**Michael G. Goldberg**
Partner

Direct Tel: 212-326-0244
mgoldberg@PRYORCASHMAN.com

May 2, 2025

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl St., Courtroom 21A
New York, NY  10007

**Re:**   *DRE Health Corporation ("DRE") v. Two Canoes, LLC ("TC")*, **1:23-cv-10643-NRB**

Dear Judge Buchwald:

      This firm represents Defendant TC in the above-referenced action (the "Action").  We write in connection with TC's request for leave to move for Rule 11 Sanctions, and specifically in response to DRE's recent submission of a chart which concedes dispositive facts as set forth below, but also contains false and deliberately misleading information intended to deceive the Court and avoid the ramifications of its misconduct, necessitating this response.

      As Your Honor is aware, TC's motion for sanctions is based upon allegations in DRE's Complaint, amplified by subsequent repeated oral and written statements by its counsel to the undersigned and to this Court, that TC caused DRE to incur approximately $1,800,000 in damages because DRE was required to "replace or refund" <u>all</u> of the gloves delivered by TC (which were allegedly counterfeit).  TC has contended that these (and many other) statements are knowingly false and designed to extort a settlement for damages that DRE never sustained. This Court's April 3 Order (Dkt. No. 45; the "Order") noted that the WynnMed Complaint and Settlement Agreement which DRE was ordered to submit "appear[] to provide initial support for Two Canoes' current position…," and directed "the parties to, in advance of the [upcoming] conference, provide a written chart to the Court detailing the source, number, type, etc. of gloves at issue."

      On April 24, having already delayed a meet-and-confer to coordinate production of a chart, Mr. Steinmetz informed us that he was prepared only to "listen to us" or receive our information (though very few facts requested by the Court would be in TC's possession), and had none of the responsive information, which he would try to obtain from his client (weeks after Your Honor's Order was issued and only days before the submission deadline).[1]  Mr. Steinmetz finally returned

---

[1] It bears noting that if this were true, Mr. Steinmetz filed a Complaint in Federal Court, made affirmative statements to Your Honor defending the damage claims in that Complaint, and elected not to amend the

PRYOR CASHMAN LLP

Hon. Naomi Reice Buchwald
May 2, 2025
Page 2

a chart just before midnight on April 28 (approximately 24 hours before it was due to the Court), and then categorically refused to provide <u>any</u> of the most basic documentation, including specific documents he referenced in the chart. It was clear that this conduct was carefully calibrated to deprive TC of the opportunity to meaningfully analyze and then work with DRE on the chart, as directed by this Court. Moreover, the chart which DRE then filed (Dkt. 48) contained false, misleading, irrelevant and disputed information in a transparent attempt to deceive and distract the Court. As a result, we are constrained to submit this written response, along with the exact chart filed by DRE, but adding row numbers and column letters (for ease of reference), and highlighting both the dispositive admissions and false information DRE included in its chart.

1. **The Data Included by DRE in the Chart Confirms that the Damages in DRE's Complaint Were Deliberately Inflated, Warranting the Imposition of Sanctions.**

*First*, DRE concedes in its chart that the July 1, 2021 Settlement Agreement (the "Settlement Agreement") is the <u>sole</u> settlement of all disputes between WynnMed and DRE, including any claims involving TC (row 8, column N). Moreover, a review of the Settlement Agreement confirms that it does not include any settlement related to the Hongray goods TC supplied. Specifically, the Settlement Agreement defines "Invoice" as Invoice No. 279474, which relates only to the 60 containers of non-Hongray gloves *not* supplied by TC (row 7, column E).[2] It then clearly defines the "Disputes" being settled as "claims regarding the quality of *products delivered under the Invoice*" (row 7, column N, citing Settlement Agreement recitals) (emphasis added).) Notably, the sixth "Whereas" clause also specifically provides that, "as a consequence of such Disputes [related exclusively to the non-TC goods] WynnMed Inc., has asserted a claim against DRE related to the Invoice, demanding damages not less than $5,000,000 from DRE related to same…"

Thus, it is clear that all of the future discounts, replacement of PPE, and the other settlement terms relate exclusively to 60 containers, and do not relate to the Hongray-branded goods supplied by TC. Since the chart concedes that all WynnMed claims were resolved exclusively by the Settlement Agreement, and the Settlement Agreement by its terms dealt exclusively with the 60 containers not delivered by TC, it is clear that there was no settlement payment or other compensation provided by DRE to WynnMed related to the TC goods.[3]

---

Complaint in response to our Rule 11 motion, all without even requesting (let alone reviewing) the most critical documents and information in this case related to damages.

[2] This is in keeping with the WynnMed Complaint (Index No. 507140/2021 (N.Y. Sup. Ct.)), which only attached the invoice relating to the 60 containers (not the invoice relating to the 10 containers of Hongray-branded gloves acquired from TC).

[3] DRE appears to argue in its chart that since paragraph 3 of the Settlement Agreement contains a broad release, including the claims in the New York Litigation, that all of the payment and other terms of the Settlement Agreement must also somehow cover the TC goods. However, DRE's argument ignores the fact that broad release language from all claims (typically including claims which were or could have been



Hon. Naomi Reice Buchwald
May 2, 2025
Page 3

     *Second*, DRE's chart also includes other information which is dispositive and confirms that the damages sought in its Complaint were never even incurred by DRE, and the repeated subsequent oral and written representations by DRE's counsel to the Court that DRE "refunded or replaced" all 10 containers of gloves delivered by TC were knowingly false. Specifically, as to replacement, all of the 30,760 cases of Hongray gloves DRE purchased from TC were sold to WynnMed (row 8, columns A-B), and of that amount WynnMed returned only 4,043 cases (row 8, column M). Thus, DRE's own chart acknowledges that it replaced (if any) only those 4,043 cases (of 30,760 delivered) (row 8, columns P & S).[4] As to a refund or payment, DRE's chart concedes that it paid no money to WynnMed related to the Hongray gloves (row 8, column S), nor was the allegedly "earmarked" credit (a preposterous post-hoc claim, first asserted *last week* based only on DRE's self-serving say-so) actually used. Specifically, DRE claims that "$4.131 M of the $6.131 Million Credit already applied" related to the 60 containers delivered by DRE under the Invoice (row 7, column R), but is forced to admit that in connection with the TC gloves, the sole compensation was "[r]eplacement of returned TC gloves [4,043 cases], plus $2M of the $6.13 M credit *earmarked* for Hongray claim" (row 8, column R) (emphasis added). Thus, while $4.131M was "already applied" to the unrelated 60 containers, the remaining $2M was only "*earmarked*" (*i.e.*, neither applied nor paid); and since DRE transferred its business to a different entity to evade its judgment creditors, even if true, any "earmarked" credit will never be applied. And what proof does DRE offer for this ham-handed explanation that a credit was "earmarked;" a claim directly contradicted by the express terms of the Settlement Agreement (which provided the credit related only to gloves sold under the Invoice)? It refers only to a self-serving email from its own client sent just days ago, which it refused to even produce. Thus, DRE's own chart confirms that (at most) it replaced 4,043 cases of TC gloves.

     Together, these admissions prove that DRE's Complaint demanding $1.8 million (*e.g.*, Dkt. 30 ¶¶ 141, 152) were based upon knowingly false allegations reiterated repeatedly in writing by its counsel, namely that DRE "refunded or replaced" all of 30,760 cases of Hongray brand gloves supplied by TC and purportedly returned by WynnMed. In fact, DRE's damages were at most approximately $263,000 (4,043 cases at $65/case).[5] This conduct – misusing judicial process

---

asserted in a litigation) are standard in settlement agreements. More importantly, that argument intentionally ignores all of the specific references throughout the agreement addressing the resolution of the <u>D</u>isputes (specifically defined – by reference to the Invoice – to include only the 60 containers of DRE goods, excluding the 10 containers of TC goods). If DRE had wanted to include the TC goods as a direct part of the settlement and compensation it could have easily done so; it chose not to. Lastly, DRE's argument is also undermined by Section 2.b. of the Settlement Agreement, which expressly notes that in exchange for resolving the *Disputes*, all claims will be released.

[4] It is noteworthy that although DRE claims to have replaced just those 4,043 cases (row 8, columns P & S), it deliberately withheld all documentation that it actually did so. Thus, whether it even replaced this small fraction of the delivery is not at all certain.

[5] Copies of Mr. Steinmetz's communications to TC and the Court affirming that all of the 30,760 cases of Hongray gloves sold to TC were "refunded or replaced" are attached hereto. *See*, January 16, 2025 email from Michael Steinmetz stating, "My understanding is a full refund was provided for the gloves and the



Hon. Naomi Reice Buchwald
May 2, 2025
Page 4

in federal court by asserting a claim for over $1.5M in damages that were never incurred in a bid to extort an undeserved settlement, and then lying about it – clearly warrants sanctions.

   2. **The DRE Chart Seeks to Disguise the Fraud by Incorporating False and Deliberately Misleading Statements and Information.**

Rather than acknowledge the now confirmed falsity of the Complaint and subsequent written communications, DRE and its counsel doubled-down and submitted a chart replete with misinformation and obfuscation, presumably in the hope that by distracting and misleading the Court, they might avoid liability. As an initial matter, Mr. Steinmetz notes that the quality of the 60 containers affected by the alleged issues was "indeterminate" (row 7, column L), while "ALL" of the 10 containers of Hongray gloves were affected (row 8, column L). This is directly contracted by the WynnMed Complaint (which alleges that "approximately 40" of the 60 containers were "contaminated, defective, and unsalable"), as well as DRE's own admission that only 4,043 cases of the 30,760 cases of Hongray gloves were returned and replaced (row 8, columns M, P & S). Additionally, Mr. Steinmetz claims that none of the 60 containers were found to be contaminated (row 7, column R). Not only is that statement directly contradicted by the Settlement Agreement, which provides significant compensation because 40 of the 60 containers of DRE goods were defective, it is based solely on DRE's purported "audit," with no supporting documentation.[6]

Mr. Steinmetz also includes a host of disputed information in columns that were dropped from TC's chart because they are entirely irrelevant to the sanctions issue at hand (*e.g.*, claims to legal fees, supposed "reputational damage," and damages premised on the Terms & Conditions DRE wrongly claims applied to the parties' transaction, as TC extensively briefed in its pending motion to dismiss).[7] While DRE is indisputably permitted to claim damages for these items if

---

damages are substantiated," January 22, 2025 letter from Michael Steinmetz to this Court (Dkt. 28), claiming "all [of the gloves sold by TC] were either refunded or replaced by Plaintiff," and February 20, 2025 letter from Michael Steinmetz to this Court (Dkt. 33), claiming that "DRE was required . . . to refund or replace all cases [sold to it by TC]."

[6] Mr. Steinmetz also improperly provides the information (*i.e.*, Purchase Order number, Invoice number, and price) for the Hongray gloves sold to it by TC, rather than the information regarding the Hongray gloves sold to WynnMed by DRE (which DRE continues to withhold), as falsely stated in the chart (row 8, columns D-E).

[7] Among this misleading and irrelevant information is a claim that TC unilaterally terminated the parties' confidential testing of the gloves. The parties' confidential testing – which was undertaken in connection with settlement negotiations and thus should not have been mentioned by Mr. Steinmetz – has no relevance to TC's motion for sanctions. Mr. Steinmetz references it in the chart solely in the hopes of distracting the Court from the issue at hand. Furthermore, from the outset DRE failed to abide by the parties' protocol for the testing, including DRE's providing an affirmation that the gloves sent to the testing company were among those supplied by TC and were chosen at random. Thus, based on Mr. Steinmetz's refusal to follow the protocol he negotiated and that fact that only certain sizes were provided for testing, there is no confirmation that the gloves sent by DRE for testing were even the gloves TC supplied. Thus, the test results were rendered meaningless. Finally, we understood from the testing company that the size of the

PRYOR CASHMAN LLP

Hon. Naomi Reice Buchwald
May 2, 2025
Page 5

valid, its Complaint instead falsely alleged over $1.5M in damages for losses it knew it never sustained.

In sum, the chart filed by DRE (i) confirms the basis of TC's motion for sanctions based upon DRE's falsely inflated damage claims, and (ii) perpetuates its ongoing efforts to deceive the Court regarding its attempt to extort a windfall settlement from TC. Even if DRE possessed valid claims – it does not – the total actual damages based on replacement or refunds related to TC goods would have been less than $300,000.  Instead, DRE lied and sued for $1,500,000, seeking a massive recovery from TC for damages it never incurred.  When confronted by counsel for TC on this obvious discrepancy, DRE's counsel repeatedly asserted the same false statements about DRE's damages, even in the face of a Rule 11 motion.  As a direct result of this egregious misconduct by DRE and its counsel, and refusing to be extorted to pay money not owed in settlement, TC has been forced to expend hundreds of thousands of dollars in unnecessary legal fees.  (And this does not take into account the many hundreds of thousands of dollars previously expended in defending against these very same claims in the litigation commenced originally in the W.D. Mo. that was dismissed by DRE at the end of discovery for tactical advantage, which is the subject of a separate motion under F.R.C.P 41.)  In total, DRE's misconduct has required TC to unnecessarily expend over $500,000 in legal fees to date, an amount far in excess of any legitimate loss DRE may have incurred (even if the underlying claim had been meritorious).  The appropriate remedy is the filing of a Rule 11 motion against DRE and its counsel, where recovery for such losses can be sought.

We thank the Court for its ongoing assistance in this matter and look forward to appearing at the May 13th hearing.

Respectfully submitted,

*/s/ Michael Goldberg*

Michael G. Goldberg

cc:     Counsel of Record via ECF

---

gloves would not change, and there was no need to continue spending money to test additional gloves for that metric. Thus, DRE's mention of testing in the chart is irrelevant, except that it further underscores DRE's counsel's ongoing deceptive and evasive conduct.

**Gloves Sold to WynnMed (Subject to Lawsuit Index. No. 507140/2021)**

|  | Dispositive admissions supporting TC's motion for Rule 11 Sanctions against DRE and its counsel |
|---|---|
|  | Demonstrably false statements by DRE, which may be further explained at the in-person conference scheduled for May 13, 2025, at the Court's request |

| DRE Source of Supply | Type of Gloves | Quantity Ordered (cases; containers) | DRE Purchase Order No. | Supplier Invoice No. | Price Per Case | Total Cost | Total Damages Claimed by WynnMed in New York State Action | Delivery Date(s) to WynnMed by Quantity | Complaint by WynnMed (Y/N) | Nature of Alleged Issue(s) with Gloves | Quantity of Goods Affected by Alleged Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| (Source for 60 Containers of Vinyl Gloves) *See* ECF No. 1-3 (Ex. A to WynnMed New York Litigation | Vinyl Gloves (WynnMed Compl. ¶ 8) | 60 containers (WynnMed Compl. ¶ 9) | P.O. No. 10742 (WynnMed Compl. ¶ 8, Exhibit B) **This is an admission that the Purchase Order - which is the subject of the WynnMed Settlement Agreement - only covered the 60 containers of gloves sold by DRE to WynnMed and not the 10 containers of Hongray branded gloves sold by DRE to WynnMed.** | Invoice No. 279474 (July 1, 2021 Settlement Agreement Recitals) **This is an admission that the Invoice - which is the subject of the WynnMed Settlement Agreement - only covered the 60 containers of gloves sold by DRE to WynnMed and not the 10 containers of Hongray branded gloves sold by DRE to WynnMed.** | $56.77 (WynnMed Compl. ¶ 9) | $12,262,320.00 (WynnMed Compl. ¶ 9) | $5,000,000 (WynnMed Compl. ¶¶23-25, 32, 34, 36, 43) | 1/31/21 - 2/23/21 (21 containers) 2/28/21 - (8 containers) 3/26/21 - 4/6/21 (31 containers) (WynnMed Compl. ¶¶ 11, 12, 17) | Yes (WynnMed Compl. ¶¶ 18-20) | Contaminated with droppings & insect eggs, covered in greasy material, missing thumbs or finger (WynnMed Compl. ¶ 18) | Indeterminate amount, later audited by DRE to show not true |
| Two Canoes (TC) | Hongray Brand, "High-quality" Vinyl Examination (DRE Complaint against TC, ¶¶ 29, 31-32) | 10 containers [30,760 cases] (DRE Complaint against TC, ¶ 11) | P.O. No. 278179 (sold by DRE to WynnMed)(DRE Complaint against TC, ¶ 8, Exhibit A) | Invoice 1223 (sold by DRE to WynnMed) (DRE Complaint against TC, ¶¶ 10-11, Exhbit B) | $57.5 (DRE Complaint against TC, ¶¶ 9, 52) | $1,768,700.00 (paid by DRE to TC) | $5,000,000 (WynnMed Compl. ¶¶23-25, 32, 34, 36, 43) | 1/22/2021 (10 containers) (WynnMed Compl. ¶ 23) November 2020 - January 2021 (DRE Complaint against TC, ¶ 77) | Yes (WynnMed Compl. ¶¶ 23-24) | Missized & quality issues (WynnMed Compl. ¶ 23) Counterfeit Issues (WynnMed Compl. ¶¶23-25, 32, 34, 36, 43) | ALL (WynnMed Compl. ¶ 24; Email from DRE's Counsel dated 6/20/24 in response to Court's Order at Dkt. 24) |

| | M | N | O | P | Q | R | S |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | **Quantity Returned to DRE by WynnMed (if applicable)** | **Gloves Covered By July 1, 2021 Settlement Agreement (Y/N)** | **Settlement Details Under July 1, 2021 Settlement Agreement ( Replacement, Credit, Etc.)** | **Gloves Covered by Other Settlement Agreement** | **Goods Replaced Under Any Settlement Agreement** | **Gloves found to be counterfeit or contaminated after review** | **Payment under July 1, 2021 Settlement** |
| 7 | | Plaintiff's position:<br>"60-container" recital is expressly folded into the Settlement Agmt along with the entire "New York Litigation" (§ 1). The New York Litigation—WynnMed's Kings-County case—pleads the counterfeit-Hongray issue in every cause of action: Breach (WynnMed Compl. ¶¶ 28, 32) – damages for "contaminated, defective and counterfeit vinyl gloves." Unjust enrichment (Id. ¶ 34, 36) – repeats "contaminated, counterfeit and defective" gloves. Fraud (Id. ¶¶ 38-40) – asserts DRE mis-represented that "10 containers … were manufactured by Hongray." The Settlement Agmt then (i) releases "any and all claims … related to the Invoice or the New York Litigation" (§ 3) and (ii) lets WynnMed return "any unwanted PPE sold … pursuant to the Invoice" (§ 2(c)). Because the Hongray containers are the very subject of those pleaded paragraphs, they fall squarely within §§ 2(c), 3 & 4.<br><br>Defendants Position:<br>- Recitals (referencing the 60 containers and the related invoice, and New York Litigation<br>- "Dispute" is defined in relation to the singular "Invoice" related to the 60 containers of vinyl gloves | $6,131,160 credit to be used by WynnMed for products from DRE (Settlement Agmt. ¶ 2(a).)<br><br>13 containers of ProCure brand cool blue nitrile exam gloves at no cost (Settlement Agmt. ¶ 2(c).) | n/a | 13 containers of ProCure brand cool blue nitrile exam gloves at no cost (Settlement Agmt. ¶ 2(c).) | No (Audit by Client) | $4.131 M of $6.131 Million credit already applied |
| 8 | 4,043<br>(WynnMed Compl. ¶ 24) | Yes<br><br>July 1, 2021 Settlement Agmt: Agreement expressly extinguishes all claims "related to the Invoice or the New York Litigation" (§ 3) and allows Downstream Parties to return "any unwanted PPE sold by DRE pursuant to the Invoice" for replacement (§ 2(c)) and Hongray is one of the quality and counterfiet-dispute claims pleaded in the New York Litigation (WynnMed Compl. ¶¶ 23-25). Under §§ 2(c), 3 & 4, those gloves—and any related counterfeit/size allegations—are fully released as part of the $6.13 M credit-and-replacement.<br>(WynnMed Compl. ¶¶23-25, 32, 34, 36, 43) | $6,131,160 credit to be used by WynnMed for products from DRE (Settlement Agmt. ¶ 2(a).)<br><br>13 containers of ProCure brand cool blue nitrile exam gloves at no cost (Settlement Agmt. ¶ 2(c).) | Replaced all returned TC cases with DRE Gloves, prior to and in addition to, settlement in New York Litigation<br><br>**This is an admission that the only TC gloves purportedly replaced by DRE were the gloves that were returned by WynnMed - approximately 4,043 cases - and not the entire shipment, contrary to DRE's representations to this Court.** | Replaced all returned TC cases with DRE Gloves, prior to and in addition to, settlement in New York Litigation. 13 containers of ProCure brand cool blue nitrile exam gloves at no cost (Settlement Agmt. ¶ 2(c).) | Yes, counterfeit (email from Hongray FDA rep and owner daughter) (additional course - testing in middle of being conducted by Nelson | Replacement of returned TC gloves, *plus* $2 million of the $6.13 M credit earmarked for Hongray claim<br><br>**This is an admission that DRE did not refund payment to WynnMed for the entire shipment of TC gloves, contrary to DRE's representations to this Court.** |