**PRYOR CASHMAN LLP**

New York | Los Angeles

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806   www.pryorcashman.com

**Michael G. Goldberg**
Partner

Direct Tel: 212-326-0244
mgoldberg@PRYORCASHMAN.com

June 19, 2025

**VIA ECF**

Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl St., Courtroom 21A
New York, NY  10007

    Re:    *DRE Health Corporation ("DRE") v. Two Canoes, LLC ("TC")*, **1:23-cv-10643-NRB**

Dear Judge Buchwald:

    As Your Honor is aware, this firm represents Defendant TC in the above-referenced action (the "Action").  We write in response to the letter submitted on June 18, 2025 (Dkt. 60) by Michael Steinmetz, Esq. on his personal behalf – rather than on behalf of his client, DRE.

    Most critically, Mr. Steinmetz misperceives the issues at bar.  His June 18 letter is an improper attempt to oppose TC's Rule 11 motion at a time when procedurally the only issue before the Court is Mr. Steinmetz's motion to withdraw as counsel for DRE.  TC has clearly stated that it does not oppose Mr. Steinmetz's motion to withdraw, though it respectfully requested that the Court retain jurisdiction over him in connection with its forthcoming motion for sanctions against both Mr. Steinmetz and DRE (*see* Dkt. 59).  Mr. Steinmetz did not, and cannot, dispute TC's case law demonstrating the propriety of maintaining jurisdiction over withdrawing counsel accused of Rule 11 violations – attorneys who commit ethical violations cannot avoid the consequences for their wrongful conduct simply by withdrawing as counsel.  In sum, the withdrawal motion is unopposed, and Mr. Steinmetz cites no argument or case law to contradict TC's argument and case law that this Court should continue to retain jurisdiction over him for purposes of considering the soon-to-be-filed Rule 11 motion.

    The balance of Mr. Steinmetz's letter is simply an improper and premature opposition to TC's Rule 11 motion, which has not yet been filed.  In fact, we understand that such a motion cannot be filed until the motion to withdraw is decided and, if granted, DRE has had an opportunity to retain new counsel to defend against that Rule 11 motion.  We do briefly note, however, that the various personal defenses set forth by Mr. Steinmetz in his June 18 submission are extraordinarily weak.  He mostly reiterates past defenses that have already been considered and rejected by this Court, such as the argument that DRE's unilateral decision to write off the entirety

PRYOR CASHMAN LLP

Hon. Naomi Reice Buchwald
June 19, 2025
Page 2

of the approximately $1.8 million it paid to TC for the Hongray gloves somehow proves that it actually refunded to its customer WynnMed the entire amount WynnMed paid. The evidence is clear that DRE only replaced the 4,043 cases returned to it by WynnMed and made no other payment to WynnMed in connection with the Hongray gloves sold to it by TC (as confirmed by the Settlement Agreement). (*Compare* Dkt. 60 at 3 *with* 5.27.25 Tr. at 4:23-5:19.)

It bears noting that there are two additional issues with Mr. Steinmetz's attempt to justify his client's damages claim (and thus defend himself against the charge of falsely inflating his client's damages). *First*, it is incompatible with the second defense in his letter, namely, that DRE lied to him about its damages, and he was unaware of the Settlement Agreement, which reveals DRE's lies. Mr. Steinmetz cannot have it both ways: either the damages claimed in the Complaint are accurate, as he initially contends, or DRE lied to him about its damages, as he later claims (in which case Mr. Steinmetz should stop defending himself on the ground that the damage claim is accurate). Both cannot be true. *Second*, Mr. Steinmetz's belated defense that he was deceived by DRE lacks any merit. Mr. Steinmetz has been aware for months that only approximately 4,000 cases of Hongray gloves were returned to his client by WynnMed (worth approximately $250,000), and *he acknowledges that he failed to request documentation from his client* to confirm his inflated damage claim of approximately $1.8 million. (*See, e.g.*, Dkt. 60 at 1.) The law is clear that counsel's failure to reasonably investigate a client's claims, particularly in the face of contrary evidence, is sanctionable under Rule 11. *See Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00 CV 5304 (SJ), 2004 WL 896952, at *11 (E.D.N.Y. Mar. 26, 2004) (finding sanctions against counsel warranted where "[a] basic inquiry . . . would have revealed that the facts alleged in [his client's] Affidavit were false").[1] Lest there be any doubt about Mr. Steinmetz's misconduct, even after he provided the Settlement Agreement to the Court (which confirmed that the Hongray gloves were not all replaced or refunded, and thus DRE's claimed damages were inflated), he refused to acknowledge the error. To the contrary, he continued to advance bad faith arguments defending the damages, and even submitted a chart that contained misinformation intended to mislead the Court and protect himself and his client.

Finally, Mr. Steinmetz devotes a substantial portion of his misguided submission to TC's alleged improper behavior, as if purported misconduct by others would somehow either distract the Court or excuse his own sanctionable actions. It is noteworthy, however, that not only are the accusations against the undersigned false (further warranting the imposition of sanctions), but even if accepted as true would amount to nothing more than zealous advocacy on behalf of a client who

---

[1] Moreover, the premise of the argument, that Mr. Steinmetz had no idea about DRE's damages being inflated, is also false and disproven by the facts of this case. As the Court will recall, from the commencement of this case, Mr. Steinmetz went to great lengths to conceal the fact that only 4,000 cases of Hongray gloves were returned to DRE, and that the limited quantity was immediately disposed of by DRE immediately after he commenced this case. He tried to withhold those critical facts because he knew they would illuminate for TC and the Court that only a small fraction of the TC gloves were allegedly defective, and thus that DRE's claimed damages were grossly exaggerated.

PRYOR CASHMAN LLP

Hon. Naomi Reice Buchwald
June 19, 2025
Page 3

delivered first quality goods and then faced false quality claims and exaggerated damages intended to extort well over $1,500,000 for losses DRE had never incurred. Though not surprising, it is nonetheless disappointing that Mr. Steinmetz would make further misrepresentations to the Court in a bid to avoid being held to account for his own blatant misconduct.

  We await word from the Court on (i) Mr. Steinmetz's motion to withdraw (and if granted, how much time DRE will be given to retain replacement counsel to defend against the to-be-filed Rule 11 motion) and (ii) whether the Court will retain jurisdiction over Mr. Steinmetz to consider his role in the scheme to seek significant damages to which his client was most certainly not entitled. In the interim, we again thank the Court for its ongoing assistance in this matter.

          Respectfully submitted,

          */s/ Michael Goldberg*

          Michael G. Goldberg

cc: Counsel of Record via ECF