```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
```

DRE HEALTH CORPORATION,

                     **MEMORANDUM AND ORDER**

            Plaintiff

     -- against --         23 Civ. 10643 (NRB)

TWO CANOES, LLC,

                 Defendant.

```
-----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Presently before the Court is defendant Two Canoes, LLC's ("Two Canoes") motion for sanctions against plaintiff DRE Health Corporation ("DRE") and plaintiff's former attorney, Michael Steinmetz ("Steinmetz"), pursuant to Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927. ECF No. 71. Two Canoes alleges that Steinmetz and DRE filed an amended complaint on February 7, 2025, ECF No. 32 ("Amended Complaint" or "AC"), seeking approximately $1.8 million in damages, despite knowing that DRE's damages were, at most, $250,000, and that DRE's indemnification claim was baseless. ECF No. 72 ("Mot.") at 1-3. Two Canoes seeks to hold Steinmetz and DRE jointly and severally liable for $423,604.63 in attorneys' fees incurred by Two Canoes since the commencement of the action. Id. at 13. Steinmetz has opposed the motion, largely on the grounds that he reasonably relied upon representations by DRE, his former client, and on the work of DRE's former counsel Jones Day. ECF No. 78 ("Opp.") at 11-15. DRE -- who was dismissed from the case after

1

failing to secure replacement counsel -- has not appeared to oppose the motion and is no longer in operation.  ECF No. 73 ("Goldberg Decl.") ¶ 9.

This case arises from two transactions during the Covid-19 pandemic to supply medical gloves.  First, DRE contracted with Two Canoes to buy 30,760 "cases" (or 10 "containers") of vinyl gloves with a total contract value of $1,768,700.  AC ¶¶ 11, 71; Mot. at 3-5; Opp at 4-5.  Second, DRE re-sold all 30,760 cases to a third party, WynnMed Inc. ("WynnMed").  AC ¶ 69; ECF No. 73-2 ("WynnMed Complaint") ¶¶ 23-24.  WynnMed subsequently returned 4,043 of the 30,760 cases supplied by DRE, citing alleged defects.  Mot. at 1; Opp. at 5.  WynnMed then sued DRE, in part based on defects in the 10-container shipment sourced from Two Canoes, and in part based on another shipment of 60 containers, unrelated to Two Canoes.  See WynnMed Complaint; Mot. at 7.  After signing a settlement agreement with WynnMed (the "WynnMed Settlement Agreement") on July 1, 2021, DRE brought various claims against Two Canoes in Missouri, including a claim for indemnification arising out of the settlement.  See ECF No. 22, DRE Health Corporation v. Two Canoes, LLC, No. 21 Civ. 00936 (RK) (W.D. Mo. 2021) ("Missouri Complaint").  DRE dismissed the Missouri litigation in December 2022, on the eve of the discovery deadline, but one year later refiled a nearly identical complaint in this Court on December 6, 2023.  ECF No. 1 (the "Complaint").  Throughout this litigation, including in the Amended Complaint, DRE

2

sought $1,768,700 in damages or, in other words, the entire contract value of <u>all</u> 30,760 cases supplied to it by Two Canoes.

## BACKGROUND AND PROCEDURAL HISTORY

Despite its not having reached the motion to dismiss stage, this case and its predecessors have a long history, an understanding of which is critical to determining the Rule 11 motion. Therefore, before discussing the legal issues, we will briefly recount the critical facts underlying the instant motion.

### I.    The Sales Transactions

DRE was a Missouri-based "manufacturer, wholesaler, distributor, and retailer" of medical equipment. AC ¶¶ 1-2. In November 2020, at the height of the Covid-19 pandemic, DRE contracted with Two Canoes to purchase "vinyl examination gloves" used by health care providers. <u>Id.</u> ¶ 7. DRE sent a purchase order to Two Canoes, and Two Canoes returned an invoice reflecting an agreement to sell 30,760 cases of vinyl gloves at $57.50 per case. <u>Id.</u> ¶¶ 8-11; <u>see also</u> ECF No. 32-1 ("Purchase Order"); ECF No. 32-2 ("TC Invoice"); ECF No. 32-3 ("Terms and Conditions of Purchase").

DRE has alleged that the Purchase Order and TC Invoice were to purchase "Hongray" gloves, a particular brand trusted by health care providers.[1] <u>Id.</u> ¶ 40. DRE also alleged that Two Canoes warranted other "terms and conditions" related to "quality, packaging, and

---

[1]    At the time this case was dismissed, it remained disputed whether the contract was, in fact, for Hongray gloves.

other issues commonly agreed to" for personal protective equipment ("PPE").  Id. ¶¶ 60-62.  DRE took delivery of the gloves at its bonded warehouse in China.  Id. ¶¶ 78-89.  DRE subsequently entered into a contract to re-sell the same gloves to a "Glove Customer," i.e. WynnMed.  Id. ¶¶ 90-93; see also Mot. at 2-3; Opp. at 14-15. Shortly after receiving a shipment of "some of the cases" of the contracted-for gloves in March 2021, WynnMed informed DRE that the gloves "were mis-sized, unfit for use as PPE," not Hongray, and/or in "mismatched batches, with individual vinyl examination gloves of multiple sizes packaged in a single box despite each box being labeled for only one glove size."  AC ¶¶ 93, 100; see also id. ¶¶ 94-119.

## II.  WynnMed Lawsuit and Settlement

On March 25, 2021, WynnMed sued DRE in New York State court. See NYSCEF 1, WynnMed Inc. v. DRE Health Corporation, No. 507140/2021 (Sup. Ct. Kings Cnty. 2021).  WynnMed's May 5, 2021 amended complaint contained two distinct buckets of allegations.  See WynnMed Complaint.[2]  First, WynnMed referenced 60 containers of vinyl gloves supplied by DRE, but not sourced from Two Canoes, at a price of $56.77 per case, for a total contract value of $12,262,320.  WynnMed Complaint ¶ 9.  WynnMed alleged that these gloves were "serious[ly]

---

[2]    The WynnMed Complaint is also available to the public through the New York State Courts Electronic Filing System (NYSCEF).  See NYSCEF 6, WynnMed Inc. v. DRE Health Corporation, No. 507140/2021 (Sup. Ct. Kings Cnty. 2021), accessible at https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=krmm6L0yUs0uw9 Se3BtZKw==.

contaminat[ed]" due to rodent droppings and other contaminants. Id. ¶¶ 18-21. Second, WynnMed cited 10 different containers of "Hongray" vinyl gloves supplied by DRE, and before that by Two Canoes, at a price of $65.00 per case. Id. ¶ 23. WynnMed alleged that the gloves in the 10-container shipment were "mis-sized and had other quality issues," and stated that it "had no choice but to dispose of over 4,000 cases" in the 10-container shipment as defective. Id. ¶ 24. There was no factual overlap in the WynnMed Complaint between the 60-container shipment, on the one hand, and the 10-container shipment of supposed "Hongray" gloves on the other. However, WynnMed's third cause of action for fraudulent misrepresentation alleged $5,000,0000 in damages arising out of all 70 containers, without specifying which portion of the damages arose out of the 60-container shipment versus the 10-container shipment. Id. ¶ 43.

On June 1, 2021, DRE removed the case to the United States District Court for the Eastern District of New York. See NYSCEF 10, No. 507140/2021 (Sup. Ct. Kings Cnty. 2021). Days after removal, on July 7, 2021, WynnMed voluntarily dismissed its claims after signing the WynnMed Settlement Agreement with DRE.[3]

### III. The Missouri Case

After settling with WynnMed, DRE sued Two Canoes in Missouri on December 28, 2021. See ECF No. 22, DRE Health Corporation v. Two

---

[3]    The notice of voluntary dismissal filed on the public docket, see ECF No. 8, WynnMed Inc. v. DRE Health Corporation, No. 21 Civ. 03105 (LDH) (VMS), (E.D.N.Y. 2021), did not reference the WynnMed Settlement Agreement signed days before on July 1, 2021.

Canoes, LLC, No. 21 Civ. 00936 (RK) (W.D. Mo. 2021) ("Missouri Complaint"). The Missouri Complaint alleged that DRE and Two Canoes had contracted for 30,760 cases of "Hongray" vinyl gloves, but that those gloves were both counterfeit, i.e. not Hongray, and generally defective due to incorrect sizing, contamination, and other quality issues. Id. ¶¶ 12, 95-105. DRE claimed damages of $1,768,700, the contract price of all the gloves purchased by DRE from Two Canoes. Id. ¶ 233. Importantly, the Missouri Complaint included a claim for indemnification arising from "WynnMed Inc. v. DRE, Health Corporation, removed to the Eastern District of New York as Case No. 1:21-cv-03105 (the 'New York Litigation')." Id. ¶ 206. DRE was represented in the Missouri litigation by Jones Day, a well-known international law firm.

The Missouri litigation abruptly ended on December 7, 2022, when the district court so-ordered DRE's "notice of voluntary dismissal" "without prejudice." See ECF No. 61, No. 21 Civ. 00936 (RK) (W.D. Mo. December 7, 2022). A December 5, 2022 letter from Jones Day to Michael Goldberg of Pryor Cashman LLP, attorney for Two Canoes in both the Missouri litigation and this action, claimed that dismissal was "necessary due to the impending discovery deadline and our uncertainty regarding an extension." ECF No. 80-7 ("Jones Day Letter").[4]

---

[4] This explanation is implausible. Discovery deadlines are routinely extended as a matter of course. As the Court suggested at oral argument, it is more likely that Jones Day was simply not being paid by DRE, a heavily indebted company

## IV.  The Complaint

On December 6, 2023, DRE, now represented by Steinmetz's firm, Garson Segal Steinmetz Fladgate LLP, re-filed substantially the same complaint it had previously brought (and voluntarily dismissed) in Missouri.  Compare Missouri Complaint with Complaint; Amended Complaint.  The Complaint merely replaced certain Missouri law claims with New York law equivalents and added an "Implied Warranty of Fitness" claim as the Fifth Cause of Action.[5]  Complaint ¶¶ 191-209.  The factual allegations remained unchanged, as did the claim for indemnification arising out of WynnMed's lawsuit against DRE.  Compare Complaint ¶ 226 ("DRE was sued in the State of New York, in the matter of WynnMed Inc. v. DRE Health Corporation, removed to the Eastern District of New York as Case No. 1:21-cv-03105 (the 'New

---

involved in numerous litigations, and wanted to limit their economic losses without prejudicing their client:

> [I]t's probably a pretty good guess that Jones Day was not being fully paid by DRE. And, consequently, they were about to embark upon discovery, which was going to be expensive. . . . [A]ny regular attorney . . . simply would have asked for an extension of a discovery deadline.  I would say, from my years of experience, that it is frankly rare, like in the single digits, for a case to proceed without at least one extension of the discovery cutoff. So the notion that that was a reason, a legitimate reason by itself to drop the case, really doesn't pass the smell test.

ECF No. 83 ("January 8, 2026 Transcript") at 37:11-22.

[5]    The Complaint was signed by attorney Kevin Kehrli, not Steinmetz.  Complaint at 32.  Kehrli is no longer at Garson Segal Steinmetz Fladgate LLP.  ECF No. 22. Steinmetz, despite being the "relationship" partner, did not actively participate in the pre-complaint investigation, such as it was.  This issue is not dispositive, however, because the instant motion is focused on Mr. Steinmetz's decision to file and sign the Amended Complaint even after he had already been informed by Two Canoes about the possible Rule 11 motion.

York Litigation')."), ¶ 231 ("Two Canoes is liable to DRE for indemnification for all damages incurred as a result of the New York Litigation, totaling more than the entire value of the $1,768,700") with Missouri Complaint ¶ 206 (same), ¶ 211 (same).

Rather than immediately proceed to briefing on a potential motion to dismiss, on March 26, 2024, the Court granted Two Canoes' request that "DRE [first] confirm whether it remains in possession of the 4,000 cases of Hongray gloves on which its case is based, and if so, to permit TC to inspect and test a representative sample." See ECF No. 14 at 2. The Court further ordered DRE to confirm "whether it remains in possession of the gloves at issue, whether they have been sold, in whole or in part, and what plaintiff recovered on any sale, if any." Id. at 3.

Pursuant to the Court's March 26, 2024 Order, the parties conferred to exchange the necessary information and agree on a testing protocol for the gloves. In a June 20, 2024 email, exchanged as part of the meet and confer process, Kevin Kehrli, an attorney at Garson Segal Steinmetz Fladgate LLP, with Steinmetz copied, told Two Canoes that "WynnMed returned 4043 cases" but that "our client is in possession of [only] 4 cases of gloves in each size to be selected at random for testing." ECF No. 73-3 ("June 20, 2024 Email") at 1. He also informed Two Canoes that "[t]he remaining inventory was taken following [DRE's] eviction from the warehouse at which they were stored due to financial illiquidity." Id. Despite having a very

small sample size, the parties initially proceeded with testing the "4 cases of gloves in each size." However, settlement talks collapsed on January 21, 2025, and Two Canoes requested a briefing schedule for a motion to dismiss.[6] ECF No. 25. DRE submitted an opposing letter, accusing Two Canoes of having delayed the agreed-upon testing, and requesting to use the test results gathered thus far in opposing any motion to dismiss. ECF No. 26.

## V.   2(B) Letters and Hearing

On February 14, 2025, Two Canoes submitted a letter pursuant to this Court's Individual Rule 2(B), requesting leave to file a motion for sanctions under Federal Rule of Civil Procedure 11 against Steinmetz and DRE. ECF No. 31. The letter revealed that Two Canoes had served a prospective Rule 11 motion on DRE and Steinmetz on January 24, 2025, in accordance with Rule 11's "safe harbor" provision.[7] ECF No. 31 at 1. It argued that DRE's February 7, 2025 Amended Complaint, aside from correcting minor allegations about the

---

[6]    Mr. Steinmetz explained that the preliminary test results for the initial samples confirmed the quality issues alleged by DRE, and that Two Canoes suspended further testing, broke off settlement negotiations, and moved to dismiss and for Rule 11 sanctions in the immediate days and weeks following. See January 8, 2026 Transcript at 52:12-14 ("There is a reason why a Rule 11 showed up right after the testing showed up in this case.").

[7]    Rule 11's "safe harbor" gives the respondent to a prospective Rule 11 motion 21 days to amend the offending submission before the movant is allowed to file the motion with the Court. See Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.").

gloves being "contaminated,"[8] had failed to remedy the exaggerated damages claimed in the original Complaint.  See id.; see also ECF No. 82-1 ("Redline of Complaint vs. Amended Complaint").  Two Canoes alleged that DRE and Steinmetz, "rather than asserting claims against TC for the 4,000 cases upon which it had been sued by WynnMed, . . . deliberately and falsely state[d] that TC supplied all containers at issue in the WynnMed litigation (i.e., all 70 containers)," thus inflating DRE's damages claim.  ECF No. 31 at 2.  In a reply letter, DRE responded that while only 4,000 cases had been physically returned, DRE was "required to defend and settle a lawsuit requiring it to refund or replace all [30,760] cases" in the 10-container shipment "due to the reasonable fear that the quality issues identified . . . could be systemic across the entire batch" purchased by WynnMed.  ECF No. 33 at 1.  On March 7, 2025, Two Canoes responded that the terms of the WynnMed Settlement Agreement contradicted DRE's position.  ECF No. 39 at 2.  Two Canoes also requested that the Court conduct an in camera review of the WynnMed Settlement Agreement.[9] Id.

---

[8]    DRE maintained that the gloves had other defects, such as "mis-sizing" but removed references to "contamination" because the references to "contamination" concerned the 60 containers not supplied by Two Canoes.  See generally, AC.

[9]    Two Canoes' careful handling of the settlement agreement between DRE and WynnMed was appropriate since Two Canoes had received a copy of the settlement agreement in the course of a mediation in the earlier Missouri litigation. Steinmetz claims, inexplicably to this Court's understanding of professional conduct, that he did not have a copy of the settlement agreement until this Court ordered its production, and was unaware even of its existence until February 14, 2025.

The in camera review by the Court of the WynnMed Settlement Agreement in March 2025, see ECF No. 43, showed that the agreement resolved all "Disputes," defined as "claims regarding the quality of the products delivered under the Invoice as well as the proper amount owed and still outstanding under the Invoice." (emphasis added). "The Invoice," per the terms of the WynnMed settlement agreement, "was for 60 shipping containers of PPE vinyl gloves at a cost of $56.77 per case[.]"  The agreement did not explicitly mention the 10 containers of gloves at issue in this litigation.  However, it did reference the "First Amended Complaint" in "Index No. 507140/2021," defined as the "New York Litigation," i.e., the WynnMed Complaint, which included claims arising from the 10-container shipment.  The agreement also stated that it "settle[d] all claims and obligations that relate to the Disputes or the New York Litigation."  (emphasis added).  Rather than pay WynnMed cash damages, DRE agreed to extend WynnMed $6,131,160 in credit for future purchases by WynnMed.[10]

Following the in camera review of the WynnMed Settlement Agreement, the Court granted Two Canoes' request for a pre-motion conference on the prospective sanctions motion.  ECF No. 45.  In that letter the Court explained that "[o]ur review of the settlement

---

[10]    DRE represented to the Court and to Steinmetz, its now former attorney, that a portion of the settlement credit was earmarked for the 10 containers of gloves at issue in this case.  See ECF No. 80 ("Bawany Decl." dated May 27, 2025) ¶ 33. However, there is no support for this strained and self-serving interpretation in the text of the WynnMed Settlement Agreement itself, beyond the fact that the agreement resolved "all claims . . . relate[d] to . . . the New York Litigation." DRE also represented that as of May 27, 2025, approximately $4 million of the total credit had been actually used by WynnMed.  Bawany Decl. ¶ 22.

agreement and the WynnMed complaint . . . appears to provide initial support for Two Canoes' current position, namely, that there is a disconnect between the facts and damages sought in the instant case." ECF No. 45 at 1.  The Court also pointed DRE and Steinmetz towards clear precedent that, in order to secure the indemnification claimed in Count VII of the Amended Complaint, DRE would need to "prove that it was liable to [WynnMed] in the underlying action and that the settlement payment [memorialized in the WynnMed Settlement Agreement] was reasonable." Id. at 1-2 (quoting Durabla Mfg. Co. v. Goodyear Tire & Rubber Co., 992 F. Supp. 657, 659 (S.D.N.Y. 1998)).[11] On May 13 and May 27, 2025, the Court held an initial hearing on the sanctions issue,[12] see ECF Nos. 51 ("May 13, 2025 Transcript), 56 ("May 27, 2025 Transcript"), and, after a further letter exchange between the parties in June, granted Two Canoes' request to bring the motion, see ECF No. 65.

## VI.  Dismissal of the Action

Following the two in-person conferences, Steinmetz informed the Court on May 29, 2025 that "there ha[d] been a recent and irreparable breakdown in attorney-client relations" arising from "fundamental

---

[11]    Although terms of the settlement agreements are generally confidential, they may be disclosed to the extent necessary to the explanation and resolution of a motion.  The Court further notes that because approximately five years have passed since the WynnMed Settlement Agreement was signed, it is unlikely that limited excerpts of passages will be prejudicial to any ongoing business dealings of either DRE -- a defunct company -- or WynnMed.

[12]    The hearing commenced on May 13 was adjourned to May 27, 2025, following a sudden illness experienced by Mr. Steinmetz.

disagreements" between his firm and DRE, and requested permission to withdraw as DRE's attorney. See ECF Nos. 53, 54, 55. On June 27, 2025, the Court granted Steinmetz's unopposed motion to withdraw. ECF No. 62. The Court's order simultaneously informed DRE that "corporate parties may not proceed pro se and must be represented by an attorney, and failure to appear by counsel will result in dismissal of claims presented." Id. at 1 (citing Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)). The Court ordered DRE to obtain new counsel within "thirty days" to avoid "dismissal of the action." Id. at 2. An additional 14-day extension was granted. ECF No. 68. Nevertheless, DRE failed to retain counsel by the deadline. Id. Consequently, on August 14, 2025, the Court dismissed DRE's complaints with prejudice.[13] ECF No. 70. However, the Court retained jurisdiction, post-dismissal, for the limited purpose of determining the Rule 11 motion. Id. at 1; see also ECF Nos. 62, 65.

**VII. Sanctions Motion**

On August 27, 2025, Two Canoes filed its motion for sanctions pursuant to Rule 11 and 18 U.S.C. § 1927. See Mot.; Goldberg Decl.;

---

[13]   After the deadline to appear had expired, and after DRE's claims had been dismissed with prejudice, DRE attempted to "reopen" the case. Hillel Parness, an attorney at the Parness Law Firm, PLLC, requested permission to appear "for the limited purpose of requesting that the Court rescind that dismissal and allow the case to proceed with discovery," but explicitly stated that "[t]he undersigned has not committed to defend DRE or its prior counsel in connection with the newly-filed Rule 11 motion." ECF No. 74 at 1. The Court rejected the belated and partial appearance from Mr. Parness and reaffirmed the August 14 dismissal order. See ECF No. 77. Mr. Parness' proposal neither made legal nor practical sense, as the merits and the Rule 11 motion were inextricably intertwined.

13

ECF No. 71.  On September 10, 2025, Steinmetz filed opposition papers, see Opp.; ECF No. 79 ("Steinmetz Decl."); Bawany Decl., and on September 17, 2025, Two Canoes replied, ECF Nos. 81 ("Reply"), 82 ("Goldberg Reply Decl.").  On January 8, 2026, the Court held an oral argument on the motion at which Two Canoes and Steinmetz appeared.[14]

## LEGAL STANDARDS

Rule 11(b) mandates that by signing a court filing, "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose . . . ;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has

---

[14]    The Court acknowledges, as it did on the record, January 8, 2026 Transcript at 2:6-7, that it failed to notify DRE of the oral argument date.  However, the record is clear that DRE never submitted any opposition to the Rule 11 motion, of which it was well aware.  Indeed, when Mr. Parness attempted to appear, he explicitly stated that "[t]he undersigned has not committed to defend DRE or its prior counsel in connection with the newly-filed Rule 11 motion."  ECF No. 74 at 1 (emphasis in original); see also supra, p. 13 n.13.

been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[D]istrict courts . . . have wide discretion in deciding when sanctions are appropriate" even if Rule 11(b) has been violated. Morley v. Ciba-Geigy Corp., 66 F.3d 21, 24 (2d Cir. 1995); see also Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004) (sanctions determinations are only reviewable for "abuse of discretion").

"The standard for triggering the award of fees under Rule 11 is objective unreasonableness[.]" Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000). A filing meets this standard "when it is patently clear that a claim has absolutely no chance of success." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) (citation and internal quotation marks omitted). The standard is "quite rigorous and very rarely succeeds in cases where evidence of bad faith or aggravated misconduct is not apparent." Indoafric Exports Priv. Co. v. Citibank, N.A., 15 Civ. 9386 (VM), 2016 WL 6820726, at *4 (S.D.N.Y. Nov. 7, 2016), aff'd, 696 Fed. App'x 551 (2d Cir. 2017); see also Fleming v. Hymes-Esposito, No. 12 Civ. 1154 (JPO), 2013 WL 1285431, at *11 (S.D.N.Y. Mar. 29, 2013) ("Rule 11 sanctions are an extreme measure.").

Under Rule 11(b)(2), "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." Fishoff v. Coty Inc., 634 F.3d 647, 654 (2d Cir. 2011). "Rule 11 motions for

15

sanctions should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings" because "other motions are available for those purposes[,]" such as "a motion to dismiss under Fed. R. Civ. P. 12(b)(6)[.]" Luv N' Care, Ltd. v. Shiboleth LLP, No. 16 Civ. 3179 (AJN), 2017 WL 3671039, at *14 (S.D.N.Y. Aug. 8, 2017) (citation and internal quotation marks omitted).

Similarly, under Rule 11(b)(3), only the most egregious violations warrant the imposition of sanctions. "Notably, the 1993 Amendments to Rule 11 relaxed the necessary basis on which a party's claim rests from the more rigorous 'well-grounded in fact,' to a standard of 'to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . .'" E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting In re Pennie & Edmonds, 323 F.3d 86, 88-89 (2d Cir. 2003)). Under the current standard, "sanctions may not be obtained unless a particular allegation is utterly lacking in support," Baram v. Doe, No. 23 Civ. 1758 (ER), 2024 WL 232319, at *6 (S.D.N.Y. Jan. 22, 2024), appeal dismissed (June 12, 2024), such that there is a "'direct falsehood' in a party's papers," id. (quoting Sichel v. Unum Provident Corp., 230 F. Supp. 2d 325, 332 (S.D.N.Y. 2002)). In close cases, the Second Circuit "ha[s] instructed district courts to resolve all doubts in favor of the signer" of the pleading. Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 34-35 (2d Cir. 1992) (citation and internal quotation marks omitted).

Two Canoes also brings its motion against Steinmetz pursuant to Section 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927; see also Mot. at 1.  Under Section 1927, a movant must make a "clear showing of bad faith" on the part of respondent. Oliveri, 803 F.2d at 1273.  "Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel."  Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) (citation omitted) (emphasis in original).

Finally, Two Canoes invokes the Court's "inherent authority" to sanction.  Mot. at 1.  "The standard for determining whether sanctions are appropriate pursuant to the Court's inherent power is the same as the one for assessing whether sanctions are appropriate against an attorney pursuant to § 1927," namely, subjective bad faith.  Delgado v. Donald J. Trump for President, Inc., No. 19 Civ. 11764 (AT) (KHP), 2025 WL 3269483, at *2 (S.D.N.Y. Sept. 15, 2025), report and recommendation adopted, No. 19 Civ. 11764 (AT) (KHP), 2025 WL 3269160 (S.D.N.Y. Nov. 24, 2025).  However, unlike Section 1927, either an attorney or a party can be subject to the inherent

17

power to sanction.  <u>Republic of Rwanda v. Ferone</u>, No. 07 Civ. 7663 (JSR), 2008 WL 919639, at *1 (S.D.N.Y. Apr. 1, 2008).

<b><u>DISCUSSION</u></b>

Two Canoes argues that Steinmetz and DRE "deliberately misrepresented" that DRE suffered $1,768,700 in damages in the Complaint and Amended Complaint.  Mot. at 1.  Two Canoes insists that Steinmetz and DRE knew or reasonably should have known that (i) only 4,043 cases of the 30,760-case (10-container) shipment from DRE to WynnMed were returned, and (ii) that the WynnMed Settlement Agreement, on which DRE's indemnification claim was based, settled claims based on the entirely different, 60-container shipment of gloves.  <u>Id.</u> at 1-3, 5-7.

**I.    Steinmetz**

We begin by examining the factual and legal errors made by Steinmetz in this litigation.  Next, we will consider whether those errors warrant the imposition of Rule 11 sanctions in light of mitigating factors.

**a. The Importance of the Indemnification Claim**

At the outset, there is no doubt that Steinmetz understood, before he signed the February 7, 2025 Amended Complaint, that only 4,043 of the 30,760 cases were returned by WynnMed to DRE.  He was copied on an email from his colleague, Kevin Kehrli, in which Mr. Kehrli said that "Wynnmed returned 4043 cases."  <u>See</u> June 20, 2024

18

Email.  The WynnMed Complaint, which also states that "4,000" cases were "disposed" of, was publicly accessible to Steinmetz on NYSCEF since before the inception of the case.  See supra p. 4 n.2.  Finally, Steinmetz was informed of the 4,043-case figure by Two Canoes' January 24, 2025 prospective Rule 11 motion, which was served on him before he filed the Amended Complaint.  ECF No. 82-2.  These 4,043 cases had an approximate value of $250,000, and Steinmetz cannot reasonably argue he was unaware of that fact when he signed the Amended Complaint.  See AC ¶ 66 (specifying the price-per-case).

It became clear at the initial conferences on the motion that Steinmetz and DRE rooted its $1,768,700 damages claim not on an argument that all 30,760 cases were returned, but rather in a theory of indemnification based on a credit DRE extended to WynnMed to resolve the WynnMed litigation.  See May 27, 2025 Transcript at 14:10-17.  Thus, at issue is whether this theory was so "objectively unreasonable" that it warrants the imposition of sanctions.  Margo, 213 F.3d at 65.

### b. The WynnMed Settlement Agreement

Steinmetz represents that he only became aware of the WynnMed Settlement Agreement on February 14, 2025, when Two Canoes filed a letter with this Court referring to the agreement for the first

time.[15]    Steinmetz Decl. ¶ 20. (citing ECF No. 31).    Steinmetz describes his understanding of DRE's damages theory, as of February 7, 2025, as follows:

> [Before filing the Amended Complaint,] [m]y understanding—based on the Missouri record, the accounting write-off, and client communications—was that DRE had treated the [30,760-case] lot as a total loss not reimbursed by TC, and that DRE's downstream accommodation [to WynnMed] functioned as a forward-looking credit (drawn down over time) . . . . That understanding was reinforced by ledger entries and by the absence of any executed settlement documentation in the [Jones Day] file indicating a contrary result.

Id. ¶ 23.    Put differently, Steinmetz was aware of a "credit" or similar "accommodation" extended by DRE to WynnMed for an amount greater than or equal to the "total" value of the Two Canoes shipment, but he was unaware of any settlement agreement memorializing -- or contradicting -- that understanding.    This "credit" formed the basis for DRE's claim that it "refund[ed] . . . all cases [to WynnMed] due to the reasonable fear that the quality issues identified . . . could be systemic across the entire [30,760 case] batch."    ECF No. 33 at 1.

Steinmetz's most serious error was his admitted failure to obtain the WynnMed Settlement Agreement from his client before filing

---

[15]    Two Canoes received a copy of the WynnMed Settlement Agreement from Jones Day "in connection with a mediation in the [Missouri litigation]" that was voluntarily dismissed in 2022.    ECF No. 31 at 1, 3.

either the Complaint or the Amended Complaint.[16]  An "accommodation" or "credit" totaling $1.8 million is the type of arrangement that would have been memorialized prior to inking a settlement.  Steinmetz should have thought more deeply, and investigated with greater thoroughness if, when, and how this "credit" was recorded.  The original Missouri Complaint, the Complaint, and the Amended Complaint each stated that "DRE was sued in the State of New York, in the matter of <u>WynnMed Inc. v. DRE Health Corporation</u>, removed to the Eastern District of New York as Case No. 1:21-cv-03105 (the 'New York Litigation')," and claimed $1,768,700 in indemnification based on that litigation.  AC ¶ 226; Complaint ¶ 226; Missouri Complaint ¶ 206.  Steinmetz could have -- and should have -- done more to educate himself about how the WynnMed case concluded before filing this claim.

On the other hand, the substantive provisions in the WynnMed Settlement Agreement are not as damning as Two Canoes urges.  <u>See</u> Mot. at 6-7.  DRE has never asserted claims for the entire $6,131,160 "Credit" extended to WynnMed, but rather for the $1,768,700 portion that was supposedly "earmarked" for the 10 containers supplied by Two Canoes.  AC ¶ 208; <u>see also</u> Bawany Decl. ¶¶ 15, 19, 34-36.  Moreover, while the WynnMed Settlement Agreement does not mention the 10-container shipment by name, it does purport to settle "<u>all</u>

---

[16]    Steinmetz also failed to properly review the WynnMed Complaint.  <u>See</u> WynnMed Complaint ¶¶ 23-24.  However, this error is comparatively less significant given Two Canoes' focus on the Amended Complaint.

claims and obligations that relate to the Disputes or the New York Litigation."[17]    The "New York Litigation" indisputably included "claims" based on the 10-containers supplied by Two Canoes to DRE. See WynnMed Complaint ¶¶ 23-24.  Although the Court does not hold that Steinmetz or DRE's reading of the WynnMed Settlement Agreement was correct, given that the "earmark" is not in any written provision, Steinmetz's claim that some portion of the $6,131,160 credit was attributable to the 10-container shipment is not so outrageous that no reasonable attorney could assert it.[18]  Margo, 213 F.3d at 65.

### c. Spoliation Issue and Legal Implications

Next, Steinmetz failed to consider the legal merits of the indemnification claim in light of the spoliation of much of the relevant evidence.  Steinmetz knew as of at least June 20, 2024 that "[his] client [wa]s in possession of [only] 4 cases of gloves in each size," and that "[t]he remaining inventory was taken following eviction from the warehouse at which they were stored due to [DRE's] financial illiquidity."  June 20, 2024 Email at 1.  As the Court

---

[17]    The "Disputes" were defined as "claims regarding the quality of the products delivered under the Invoice as well as the proper amount owed and still outstanding under the Invoice." (emphasis added).  "The Invoice," per the terms of the WynnMed settlement agreement, "was for 60 shipping containers."  However, the use of the word "or" in "the Disputes **or** the New York Litigation" could imply to a reasonable attorney that the scope of the releases was greater than just the 60 containers and could extend to the 10 containers also mentioned in the WynnMed Complaint.

[18]    While the Court appreciates that a layperson could understand the breadth of the release to support a broader indemnification claim than intended by the release language, an experienced attorney should appreciate the standard meaning of general release language.

explained in its April 3, 2025 letter, "[i]n an indemnification action premised on the indemnitee's payment of a settlement, New York law requires, inter alia, that the indemnitee prove that it was liable to the claimant in the underlying action and that the settlement payment was reasonable." ECF No. 45 at 1-2 (quoting Durabla, 992 F. Supp. at 659). Put differently, the party seeking indemnification must show (i) that the underlying claim was meritorious and (ii) that the settlement was reasonable. Although "actual liability" may not be necessary in all cases, the underlying settlement must be reasonable in view of the "size and likelihood" of the original defendant's potential liability. Jordan Int'l Co. of Delaware v. M.V. Cyclades, 782 F. Supp. 25, 27-28 (S.D.N.Y. 1992) (emphasis added). DRE would have had to put forward documentary evidence -- such as a test of the defective merchandise -- indicating it would have likely been found liable to WynnMed for all the gloves.

The destruction of almost all of the 4,043 cases that WynnMed returned, while in DRE's custody, rendered it impracticable for DRE to prevail on its questionable thoery that Two Canoes could be obligated to indemnify DRE for the entire shipment. The remaining existence of only 4 cases of gloves of each size, a miniscule fraction of the cases returned, and the fact that these cases did not constitute a statistically significant sample, precluded any recovery. Steinmetz failed to appreciate this when filing the Amended Complaint, which included the unaltered indemnification

23

claim.    Moreover,  even  after  the  Court  had  informed  him  of  the relevant  precedent  on  April  3,  2025,  Steinmetz  declined  to  engage with,  or  failed  to  understand,  the  indemnification  caselaw.  See  ECF No.  45.    Steinmetz's  failure  to  appreciate  the  infirmity  of  the indemnification  claim,  arising  out  of  DRE's  failure  to  preserve evidence,  is  troubling  to  say  the  least.

### d. Mitigating Factors

Despite  the  evidence  that  only  4,043  of  the  30,760  cases  were returned,  Steinmetz's  failure  to  retrieve  the  WynnMed  Settlement Agreement,  and  the  deficiencies  in  the  indemnification  claim,  there are  five  factors  which  militate  against  the  imposition  of  the "extreme  measure"  of  Rule  11  sanctions:  (i)  the  high  standard  set for  awarding  sanctions  based  on  an  inflated  damages  claim;  (ii) Steinmetz's  reliance  on  his  client's  sworn  representations  and documents;  (iii)  Steinmetz's  reliance  on  DRE's  former  counsel  Jones Day;  (iv)  existing  evidence  that  the  gloves  were,  in  fact,  defective; and  (v)  the  unsuitability  of  Rule  11  for  resolving  issues  of  legal sufficiency.

First,  courts  have  set  a  high  bar  for  awarding  sanctions  based on  an  inflated  damages  amount  pleaded  in  a  complaint.    See Nolan v. Retronix, Inc.,  2007  WL  4442014,  at  *3  (N.D.  Ill.  Dec.  13, 2007)  (denying  a  Rule  11  motion  because  "damages  [amounts]  are determined  at  a  later  stage"  and  "damages  [at  the  pleading  stage] [are]  not  a  fact  but  a  prediction");  TRI, Inc. v. Boise Cascade Off.

24

Prods., Inc., 2002 WL 31108190, at *3 (D. Minn. Sept. 20, 2002) (denying sanctions for "inflated damages" where "[plaintiff] fail[ed] to plead an essential element" because "[defendant] had available to it an expeditious way to cull out flawed claims—a motion to dismiss for failure to state a claim under Rule 12(b)(6)"). Even if the Court is skeptical of a claim at the pleading stage, it is inappropriate to award sanctions unless it is "clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990), cert. denied, 498 U.S. 1028 (1991). With respect to Rule 11(b)(3) factual certifications, the 1993 Amendments relaxed the requirement from the previous "well-grounded in fact" to the more lenient "has evidentiary support or . . . is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 128 (S.D.N.Y. 2007) (Hellerstein, J.).

Second, Steinmetz was entitled to rely, to some extent, on (i) sworn representations, and (ii) documentation provided by his client. Before and after Steinmetz received the WynnMed Settlement Agreement, DRE confirmed to Steinmetz DRE's understanding that it had extended a "credit" worth at least the contract value of the entire shipment. For example, Isaac Bawany, DRE's Chief Executive Officer, stated through a sworn declaration executed on May 27,

2025,[19] that "every time counsel requested confirmation of the damages amount, I confirmed to counsel that all the T[wo ]C[anoes] goods were either replaced or refunded." Bawany Decl. ¶ 45 (emphasis added). Bawany further represented "that roughly $2 million of a $6.131 million future-purchase credit" provided as part of the WynnMed Settlement Agreement was "reserved" for the 30,760 cases/10-containers of Two Canoes gloves.[20] Opp. at 14; see also Mot. at 8. These representations provided an alternative -- albeit flawed -- narrative to Steinmetz: that DRE had incurred damages greater than the $250,000 value of the 4,043 cases when it extended the "credit" to WynnMed.

In addition to sworn representations, Bawany also provided Steinmetz with a DRE ledger entry from April 2021 showing that DRE had written off the entire $1.8 million shipment as a total loss on its books. Opp. at 2, 12; Steinmetz Decl. ¶¶ 6-7; Bawany Decl. ¶ 15. While an internal ledger entry may not be sufficient proof at summary judgment or trial, accounting records do provide some support that DRE had "replaced," "refunded," and/or "credited" the entire shipment. Bawany Decl. ¶ 45. We think that it was reasonable for

---

[19]    It is worth noting that this declaration was penned after the Rule 11 issues had arisen.

[20]    Bawany states in his declaration that "that the [10-container] lot was included in the scope of the Settlement Agreement and amounts paid thereunder" pursuant to negotiation between him and David Blonder, a representative of WynnMed, and that his understanding was that "[t]he Settlement Agreement, executed on July 1 2021, concerned WynnMed's purchase of sixty containers of DRE-brand gloves covered by Invoice 279474; and also the ten Hongray-labeled containers supplied to DRE by TC." Bawany Decl. ¶¶ 32-33 (emphasis added).

Steinmetz to rely not only on his client's representations, but also documentation provided by his client.   To hold otherwise would effectively require Steinmetz to initiate a forensic investigation as to whether accounting documents provided by his client were fraudulent.  This is not the required standard of diligence.  A pre-filing investigation "need not be exhaustive, merely reasonable," and after an attorney has "examined the financial documents" supplied by his client, he has "satisfied [his] Rule 11 investigatory burden." Televideo Sys., Inc. v. Mayer, 139 F.R.D. 42, 48 (S.D.N.Y. 1991).

Third, Steinmetz and his firm inherited the work of DRE's former counsel at Jones Day.[21]   Jones Day drafted the Missouri Complaint upon which the Complaint and Amended Complaint were based.   See

---

[21]    Steinmetz also argues that he and his firm filed the original complaint under time pressure.  DRE and Jones Day voluntarily dismissed the Missouri Case on December 7, 2022, pursuant to Rule 41(a).  See ECF No. 61, No. 21 Civ. 00936 (RK) (W.D. Mo. December 7, 2022).  DRE re-filed its case before this Court 364 days later, on December 6, 2023.  See Complaint.  Mr. Steinmetz "suspect[s] [December 6, 2023] was a day before the statute of limitations expired[.]"  January 8, 2026 Transcript at 16:13-15.  "An inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401-02 (1990).  However, the Court at oral argument noted that nothing in Rule 41 creates a one-year statute of limitations for refiling a voluntarily dismissed case, and Mr. Steinmetz was unable to point to any other rule, if any, that created a statute-of-limitations.  Although the Court agrees that the filing of this Complaint on December 6, 2023 is unlikely to be coincidental, the rule articulated in Cooter & Gell cannot weigh in favor of an attorney under the "objective" standard of Rule 11 unless there is, in fact, a relevant limitations period.  Id.  And while some states have created such a rule, see Matter of Frishberg, 211 A.D.3d 161, 163 (2022) (citing N.C.R.C.P. Rule 41[b]) ("Under North Carolina law, the plaintiff would have one year from the date of the dismissal without prejudice to refile the complaint."), there is no evidence that other Federal Rules, New York State's so-called "savings statutes," or any other provision would be applicable.  See, e.g., Fed. R. Civ. P. 60(c) (allowing a motion for relief from a final judgment "no more than a year after the entry of judgment"); C.P.L.R. § 205(a) (allowing refiling of cases dismissed on grounds other than the merits, but only within "six months," and excluding cases terminated due to "voluntary discontinuance").

27

Missouri Complaint.  Steinmetz and his firm were also supplied with Jones Day's case file, which did not include the WynnMed Settlement Agreement.[22]  Opp. at 14.  Although Steinmetz could not "blindly . . . rely upon the work of former counsel," Luv N' Care Ltd. v. Goldberg Cohen, LLP, No. 15 Civ. 9248 (NRB), 2016 WL 4411419, at *1 (S.D.N.Y. Aug. 18, 2016), aff'd sub nom. Luv N' Care, Ltd v. Goldberg Cohen, LLP, 703 F. App'x 26 (2d Cir. 2017), it is not unreasonable that he would also expect a litigation file prepared by a well-known firm like Jones Day to include such an important document, if it existed.[23]

Fourth, although the spoliation of the vast majority of the returned gloves weakened DRE's case, see supra Discussion Section I.c., DRE still had some limited evidence.  DRE retained four cases of gloves in each size that were not confiscated from the warehouse.

---

[22]  Two Canoes accuses Steinmetz of "lying" about not receiving the WynnMed Settlement Agreement prior to February 2025.  Reply at 7 n.9.  In support of this accusation, Two Canoes points to the fact that Pryor Cashman, its counsel in both this action and the Missouri litigation, received a copy of the settlement during "mediation of [the] [Missouri] case." Id.  Two Canoes reasons that, if it received a copy, Steinmetz must have received a copy from Jones Day as well.  Id.  The Court is not convinced.  A leap from incompetence to outright fraud on the Court, without more evidence, is simply too great.  The Court also refuses to infer deception from the fact that some of Steinmetz's references to the settlement agreement are preceded by the word "executed." Id.  Two Canoes argues that this implies Steinmetz was in possession of an "unexecuted" copy and is intentionally cabining his language to avoid a blatant lie.  The Court will not make this leap, especially given that Steinmetz does not, in fact, use the word "executed" before each reference to the settlement agreement. See, e.g., Opp. at 6 ("July 1, 2021 settlement agreement"), 8 ("July 2021 settlement agreement"), 9 ("the July 2021 settlement").

[23]  Steinmetz has also stated that, despite a number of attempts, he was unable to establish direct contact with Jones Day at any point.  See January 8, 2026 Transcript at 8:24-9:2 ("MR. STEINMETZ: We . . . tried to reach out to Jones Day, who would not return our emails, and so we never had direct communication with Jones Day" apart from "receiv[ing] a folder that said Jones Day file.").

28

See June 20, 2024 Email.  These remaining gloves were tested pursuant to the suspended pre-discovery testing protocol, which found "undersized palm widths, tensile strength roughly 30% of the ASTM minimum, and water-leak failures."  Opp. at 3 (citing Steinmetz Decl. ¶¶ 11-14; Bawany Decl. ¶¶ 28-31).   While the evidence adduced as of February 7, 2025 is by no means sufficient to "prove that [DRE] was liable to [WynnMed] in the underlying action," Durabla, 992 F. Supp. at 659 (explaining the requirements for a successful indemnification claim), we cannot conclude it was so weak as to merit a sanctions award.  This case terminated at an early stage of litigation and "[t]his Court is cognizant of the oft-cited principle that a Rule 11 sanctions motion may not properly substitute for a motion to dismiss or a summary judgment motion."  Silverman, 2008 WL 11449317, at *6; see also Luv N' Care, Ltd., 2017 WL 3671039, at *14.  Here, "the record before the Court does not support an award of sanctions merely because the Court [could have] found that the Complaint failed to state a claim upon which relief could be granted."  Silverman, 2008 WL 11449317, at *6.

Finally, Steinmetz's failure to engage with the Court's citation to Durabla in its April 3, 2025 letter, see ECF No. 45, is not a basis to award sanctions.  It is frustrating that Steinmetz did not digest the Court's point that indemnification claims based on a prior settlement must be supported by proof that (i) the underlying claim was meritorious and (ii) that the settlement is

29

reasonable.  Id.  However, Rule 11 is not the appropriate vehicle to "raise issues of legal sufficiency." Safe-Strap Co. v. Koala Corp., 270 F. Supp. 2d 407, 416 (S.D.N.Y. 2003) (citation omitted). "[C]laims that are plainly meritless should be disposed of early in the course of litigation through . . . pretrial motion[s]" and "[a]s a general matter, dismissal of a frivolous . . . case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort." Kim v. Kini LLC Corp., No. 20 Civ. 6009 (LDH) (RER), 2022 WL 3219290, at *4 (E.D.N.Y. June 13, 2022) (quoting Blue v. United States Dep't of the Army, 914 F.2d 525, 535 (4th Cir. 1990), cert. denied sub nom., Chambers v. United States Dep't of the Army, 499 U.S. 959 (1991)).  To the extent any doubts remain as to whether the indemnification claim met the high standard for an award under Rule 11(b)(2), we must, and do, "resolve [these] doubts in favor of" Steinmetz. Associated Indem. Corp., Inc., 961 F.2d at 34-35.

To conclude, Steinmetz committed serious errors by (i) failing to obtain and review the WynnMed Settlement Agreement, and (ii) failing to consider whether he could obtain sufficient proof to sustain the indemnification cause of action on which his damages claim was based.  However, given the high bar set for the "extraordinary" remedy of sanctions, and taking into account that Steinmetz reasonably relied on client representations and the work

of former counsel, the Court does not find that Steinmetz violated Rule 11(b).

### II. DRE

Two Canoes also seeks sanctions against DRE under Rule 11. Mot. at 1. At the outset, the Court notes that "[s]anctions for the legal . . . frivolousness of [a] complaint must run against the attorney alone." Chien v. Skystar Bio Pharm. Co., 256 F.R.D. 67, 72 (D. Conn. 2009), aff'd, 378 F. App'x 109 (2d Cir. 2010) (citing Fed. R. Civ. P. 11(c)(5) ("The court must not impose a monetary sanction: (A) against a represented party for violating Rule 11(b)(2).")). However, "both a represented party and his attorney may be sanctioned under Rule 11(b)(3) for the factual insufficiency of a complaint." Id. (citing Oliveri, 803 F. 2d at 1274) (emphasis added). Thus, DRE can only be sanctioned if they made a false representation of fact pursuant to Rule 11(b)(3).

While the infirmities of DRE's indemnification theory arising from the WynnMed Settlement Agreement are apparent, the Court finds that these issues fit more squarely into Rule 11(b)(2) than Rule 11(b)(3).[24]  See Chien, 256 F.R.D. at 72. Two Canoes' briefs, while

---

[24]    At various points, Two Canoes argues that "DRE tacitly concedes that the vast majority of the [gloves] . . . were indeed authentic" by acknowledging that only 4,043 were returned. See, e.g., Mot. at 3. However, DRE continued to insist that while 4,043 were "returned" it faced liability for additional cases, and asserted alternate theories, such as the costs of sourcing replacements, damages for "lost profits," and, most notably, the indemnification claim. We have explained that, although a party can sign a settlement agreement for a greater amount than provable damages, they cannot then seek indemnification for the excess amount. See ECF No. 45 (cutting Durabla, 992 F. Supp. at 659). However, this

repeatedly stating that there were "false allegation[s]," substantively focus whether the WynnMed Settlement Agreement supports DRE's legal theory of damages.[25]  See Mot. at 6-7.  This was also the main thrust of Two Canoes' counsel's arguments at all three hearings held on the motion.  See, e.g., May 13, 2025 Transcript at 8:15-9:12.  Finally, to the extent DRE made factual representations to the Court through the Amended Complaint, those representations are too enmeshed in the legal infirmities to independently justify imposition of sanctions.[26]

It should also be remembered that Two Canoes has secured dismissal with prejudice of all the claims against it, without having to incur discovery costs or face trial on the merits.  Its desire to avoid paying any legal fees, while perfectly understandable, does not require the imposition of the "last resort" of sanctions against Steinmetz or DRE.

---

concept is legal, not factual, and thus we cannot hold DRE liable for its legal theory, independent of its attorneys.  See Chien, 256 F.R.D. at 72.

[25]    To the extent Bawany or other representatives from DRE stated that a portion of the WynnMed Settlement Agreement was informally "earmarked," Mot. at 8; Bawany Decl. ¶¶ 32-33, Two Canoes, while entitled to skepticism, has not made an affirmative showing that Bawany did not believe it did based on his negotiations and discussions with WynnMed.

[26]    As Two Canoes itself has conceded, sanctions against DRE are purely academic, as the company is "out of business."  Mot. at 8; see also Golberg Decl. ¶ 9 ("I have been advised by counsel for BRM Trades, LLC, a company with a $7,936,280 judgment against DRE, that DRE is no longer actively operating[.]"); January 8, 2026 Transcript at 5:14-18 ("THE COURT: . . . Two Canoes has very little actual interest in getting a sanction award against DRE, given the multimillions of dollars of judgments outstanding against them, [Two Canoes] would take your place in line.").

## III. Section 1927 and the Court's Inherent Power

Finally, we must examine whether Steinmetz or DRE are subject to sanctions based on 18 U.S.C. § 1927 or the Court's inherent power.[27]  "Rule 11 requires only a showing of <u>objective unreasonableness</u> . . . , but § 1927 requires more: <u>subjective bad faith</u>[.]"  <u>Ted Lapidus, S.A.</u>, 112 F.3d at 96 (emphasis in original). The standard for awarding sanctions under the Court's inherent power is the same as for Section 1927.  <u>Delgado</u>, 2025 WL 3269483, at *2. Having found Steinmetz and DRE not in violation of Rule 11, <u>supra</u> Discussion Sections I, II, the Court also finds that Steinmetz and DRE's actions do not meet this higher threshold.

### CONCLUSION

For the aforementioned reasons, Two Canoes' motion is denied in its entirety.  The Clerk of Court is respectfully instructed to terminate the motion pending at ECF No. 71.

Dated:    New York, New York
          February 27, 2026

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[27]    Only "an attorney" may be sanctioned under Section 1927. <u>Republic of Rwanda</u>, 2008 WL 919639, at *1.  However, the Court may exercise its inherent power against a party, such as DRE, as well as an attorney.  <u>Id.</u>